<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| GARY NIKORAK, | |
| Plaintiff, | Civil Action No. 11-7015 (SDW)(SCM) |
| v. | **OPINION** |
| FEDEX CORPORATION, THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY, CONTEGO, JOHN DOE (fictitious person), JANE DOE (fictitious person), and ABC COMPANY, INC. (fictitious entity), | January 7, 2015 |
| Defendants. | |

**WIGENTON**, District Judge.

Before this Court is a Motion for Summary Judgment filed by defendant Contego Systems LLC ("Contego") and defendant Federal Express Corporation ("FedEx") (collectively "Defendants"), pursuant to Federal Rule of Civil Procedure 56. This Court has jurisdiction pursuant to 28 U.S.C. § 1332. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b). This Motion is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated below, this Court **GRANTS** Defendants' Motion.

**FACTUAL HISTORY**

Plaintiff Gary Nikorak ("Plaintiff") commenced this action due to injuries allegedly sustained on February 1, 2011 from de-icing a FedEx aircraft. (Compl. ¶35.) During the incident, Plaintiff was stationed in the bucket of a de-icing truck, from where Plaintiff applied de-icing fluid to the aircraft. (Defs.' Statement of Facts ¶¶3-6.) As the truck drove away with Plaintiff still in

1

the bucket, the bucket struck the tail of an adjacent aircraft, causing Plaintiff's alleged injuries. (*See id.* at ¶7.) Plaintiff was working at the FedEx facility, and he received training and supervision from Sal Tagliareni, a FedEx supervisor. (*Id.* at ¶¶27-31.)

At the time of the incident, Plaintiff was employed by Omni-Serve LLC ("Omni-Serv") to operate de-icing equipment at Newark Liberty International Airport. (*Id.* at ¶1.) Omni-Serv leased Plaintiff to Contego.[1] (*Id.* at ¶¶8-9.) The leasing agreement between Omni-Serv and Contego provided, in relevant part:

- Omni-Serv was responsible for paying Plaintiff's wages and unemployment insurance;
- Contego was responsible for reimbursing Omni-Serv for every leased employee's "compensation, wages, payroll, payroll taxes, employer benefit contributions, unemployment insurance, worker's compensation insurance."
- Contego could prevent or terminate the employment of Omni-Serv candidates.

(*Id.* at ¶¶10-14.)

There was also an agreement between Contego and FedEx, whereby Contego would provide de-icing services to FedEx.[2] (*Id.* at ¶15.) Contego provided Plaintiff to FedEx to de-ice the FedEx aircraft that led to Plaintiff's alleged injuries. (*Id.* at ¶19.) In turn, FedEx reimbursed Contego for the wages of the Contego employees. (*Id.* at ¶20.)

**PROCEDURAL HISTORY**

On December 1, 2011, Plaintiff filed a Complaint against Defendants for claims sounding in negligence. On January 13, 2012, Defendant FedEx filed an Answer. (Dkt. No. 3.)

---

[1] On September 1, 2003, Vehiclean changed its name to Contego Systems LLC. (Defs.' Statement of Facts ¶16.)
[2] The De-icing Agreement includes amendments that reference the substitution of Contego for Vehiclean and that extend the contracting period through 2014. (Dkt. No. 52-15, DeLucia Cert., Ex. 2.)

On April 16, 2012, Defendant Port Authority of New York and New Jersey filed a Motion to Dismiss, which this Court granted on August 14, 2012.  (Dkt. No. 9, 18.)  On August 15, 2012, the Port Authority of New York and New Jersey was terminated as a party to this action.

On May 24, 2012, Defendant Contego filed an Answer.  (Dkt. No. 13.)

Magistrate Judge Madeline C. Arleo entered an Order referring this case to mediation on December 9, 2013.  (Dkt. No. 34.)  At the request of the parties, Judge Arleo entered another Order referring the case to mediation on April 10, 2014.  (Dkt. No. 48.)

As mediation failed to resolve the issues, Defendants Contego and FedEx filed the instant Motion for Summary Judgment on July 15, 2014.  (Dkt. No. 52.)  Plaintiff filed opposition on August 16, 2014.  (Dkt. No. 53.)[3]

**LEGAL STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law."  *Id.* at 248.  A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for

---

[3] After the Clerk's Quality Control Message on August 16, 2014 indicated that Plaintiff's opposition was procedurally deficient because the signature of Plaintiff's counsel was missing, Plaintiff re-filed his opposition on September 11, 2014 to include both his signature and a response to Defendants' Statement of Facts, after Defendants had already filed their reply papers. Under Local Civil Rule 56.1(a), "[t]he opponent of summary judgment shall furnish, with its opposition papers, a responsive statement of material facts . . . any material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion." L. Civ. R. 56.1.

3

the nonmoving party." *Id.* The dispute is not genuine if it merely involves "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Once the moving party meets its initial burden, the burden then shifts to the nonmovant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations, speculations, unsupported assertions or denials of its pleadings. *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp.*, 477 U.S. at 325). Further, the nonmoving party is required to "point to concrete evidence in the record which supports each essential element of its case." *Black Car Assistance Corp. v. New Jersey*, 351 F. Supp. 2d 284, 286 (D.N.J. 2004). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which . . . [it has] the burden of proof," then the moving party is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322-23.

**DISCUSSION**

To determine whether summary judgment is appropriate, this Court must evaluate whether Plaintiff's tort claim against Defendants is barred by the New Jersey Workmen's Compensation Act, N.J. Stat. Ann. § 34:15–1 ("the Act"). The Act involves a five-factor "special employee" test to determine whether Plaintiff, a loaned employee, is eligible to bring a claim against Defendants Contego and FedEx, his borrowing employers. Because this test compels the conclusion that Plaintiff's tort claim is barred by the Act, Defendants' Motion for Summary Judgment is granted.

*Scope of the Act*

The Act generally provides that a plaintiff is entitled to worker's compensation benefits from his employer regardless of fault, but is precluded from suing his employer in tort. *See Gore v. Hepworth*, 316 N.J. Super. 234 (App. Div. 1998); *Ward v. United States*, 2012 WL 1850970, *3 (D.N. J. May 17, 2012). In New Jersey, "an employee may have two employers for purposes of the workmen's compensation scheme—a primary employer and a 'special' employer—and is barred from bringing a tort lawsuit against either employer." *Roma v. United States*, 344 F.3d 352, 364 (3d Cir.2003). New Jersey courts liberally construe the term "employee" in the Act "in order to bring as many cases as possible within [its] scope." *Marino v. Indus. Crating Co.,* 358 F.3d 241, 244 (3d Cir. 2004). This liberal construction is applied not only when a plaintiff seeks the protection of the Act, but also "when he attempts to have himself excluded from the coverage of the act." *Santos v. Std. Havens*, 225 N.J.Super. 16, 25-26 (App. Div. 1988). Here, Plaintiff was not directly employed by Contego or FedEx and is seeking to exclude himself from coverage under the Act. As will be explained below, because both Contego and FedEx are Plaintiff's "special employers" under the Act, Plaintiff's tort claims against Defendants are barred.

*"Special Employer" Test*

In New Jersey, the following five factors help to establish a special employment relationship:

(1) An express or implied contract for hire between the employee and the employer in question;

(2) The work being performed by the employee is essentially the work of the employer in question;

(3) The employer has the right to control the details of the work;

(4) The employer pays the employee's wages and benefits; and

(5) The employer has the power to hire, discharge, or recall the employee

*Ward v. United States*, 2012 WL 1850970, at *3; *Volb v. Gen. Elec. Capital Corp.*, 139 N.J. 110, 116 (1995); *Blessing v. T Shriver & Co.*, 94 N.J. Super. 426, 430 (App. Div. 1967). The Third Circuit has held that no single factor is "necessarily dispositive, and not all five [factors] must be satisfied in order for a special employment relationship to exist." *Marino*, 358 F.3d at 244. While all factors should be considered, "the most important factor in determining a special employee's status is whether the borrowing employer had the right to control the special employee's work." *Brogna v. United States*, 2007 WL 2572377, at *6 (D.N.J. Aug. 31, 2007) (citing *Volb*, 139 N.J. at 116).

### A. <u>Contego</u>

Plaintiff essentially concedes that Contego was Plaintiff's "special employer," so this Court need not reach the five-part "special employer" test as it relates to Contego. In particular, Plaintiff fails to dispute that Contego was his special employer and does not explain why the Act's provisions should be disregarded. Plaintiff admits that the contract between Omni-Serv and Contego "was written in anticipation of challenges and addresses most of the relevant questions" of the five-part "special employer" test. (Pl.'s Opp. 7.) Further, Plaintiff admits that Contego

regularly provided Plaintiff's training and supervision, which supports the third and most important element of the five-part test, that Contego had the right to control the details of Plaintiff's work. (*Id.* at 12.) Therefore, this Court finds that there is no genuine dispute of material fact that Contego was Plaintiff's special employer. Hence, summary judgment is granted as to Contego.

**B. FedEx[4]**

1. An implied contract existed between Plaintiff and FedEx.

An implied contract exists where the plaintiff employee consents to the special employer's direction and control. *See Ward v. United States*, 2012 WL 1850970, at *4 (*quoting Pacenti v. Hoffman–La Roche, Inc.*, 245 N.J.Super. 188, (App. Div. 1991)). Here, Plaintiff argues that he had no understanding that he entered into an employment relationship with FedEx, so no valid contract was formed. In response, Defendants argue that an implied contract existed because Plaintiff consented to FedEx's instructions and supervision. This Court finds that an implied contract for hire existed between Plaintiff and FedEx based upon Plaintiff's consent. During the incident, Plaintiff worked exclusively at the FedEx facility de-icing a FedEx aircraft, and he received training and supervision from Sal Tagliareni, a FedEx supervisor. (Defs.' Statement of

---

[4] Contrary to Plaintiff's arguments, the De-Icing Agreement demonstrates that FedEx and Contego had a valid contract on the date of Plaintiff's incident on February 1, 2011. Plaintiff argues that the De-Icing Agreement is inapplicable because the named party is "Vehiclean," not Contego, and because the term of the De-Icing Agreement ended on July 31, 2001. However, the De-Icing Agreement includes amendments that extended the contract term through July 31, 2014, and it further reflects the name change from Vehiclean to Contego.

Although Plaintiff claims that FedEx failed to produce a copy of the De-Icing Agreement, FedEx provided a copy of the De-Icing Agreement in August 2012 along with FedEx's Rule 26 disclosures and in correspondence with Plaintiff's counsel. Plaintiff further argues that Defendant failed to timely raise the Workers' Compensation Law as a defense. This argument is also without merit because FedEx asserted this as its Twentieth Separate Defense in its Answer.

7

Facts ¶¶27-31.) Thus, there is no genuine dispute of material fact that Plaintiff consented to FedEx's direction and control.

### 2. The work performed by Plaintiff was essentially the work of FedEx.

This factor requires an analysis of the work performed by the employee in order to determine that a special employment relationship exists where the employee is performing "work that is more accurately characterized as work of the special employer alone." *Marino v. Indus. Crating Co.*, 358 F.3d at 247; *See Antheunisse v. Tiffany & Co.*, 229 N.J. Super. 399, 404 (App. Div. 1988) (finding that a temporary employee placed at Tiffany's was a special employee of Tiffany's, in part because the employee's duties were "definitely part of [Tiffany's] regular business," rather than the work of the temporary agency). Here, Plaintiff argues that he was not performing the work of FedEx because FedEx is in the shipping business, while Plaintiff was instead hired to perform de-icing work for FedEx. However, FedEx also performs de-icing work, as FedEx would regularly de-ice its aircraft prior to outsourcing its de-icing work. (Dkt. No. 52-8, Hourican Cert., Ex. E.) In addition, pursuant to the De-Icing Agreement, Fed-Ex provided and maintained the de-icing materials, and managed and supervised the de-icing program. Overall, Plaintiff was performing the work of FedEx.

### 3. FedEx had the right to control the details of the work.

As previously noted, the most important factor of the five-part "special employer" test is whether the special employer executed control over the employee's work. *Brogna v. United States*, 2007 WL 2572377, at *6 (D.N.J. Aug. 31, 2007) (citing *Volb*, 139 N.J. at 116). Defendants argue that FedEx was in control of Plaintiff's work during the incident, as evidenced by Mr. Tagliareni's detailed supervision over Plaintiff and FedEx's orientation and training concerning de-icing procedures. In opposition, Plaintiff admits that FedEx provided supervision, but argues that

FedEx's negligent supervision led to his injuries, which should somehow exempt Plaintiff from the Worker's Compensation Act.  Plaintiff's position is untenable because the relevant issue with respect to this factor is control, not negligence.  Additionally, the term "employee" in the Act is liberally construed "in order to bring as many cases as possible within [its] scope." *Marino v. Indus. Crating Co.,* 358 F.3d 241, 244 (3d Cir. 2004).  Accordingly, this Court finds that FedEx exercised control over Plaintiff by providing de-icing training and supervision on the date of the incident.

### 4. FedEx paid Plaintiff's wages and benefits.

The factor concerning which entity pays Plaintiff's wages and benefits "shrinks into comparative insignificance in lent-employee problems, because the net result is almost invariably that the special employer ultimately pays for the services received and the employee ultimately gets his wages." *Santos v. Std. Havens*, 225 N.J. Super. 16, 24 (App. Div. 1988) (*quoting* 1C Larson, Workmen's Compensation Law § 48.30, p. 8-503-504 (1986)).  Further, indirect compensation, where the special employer reimburses the general employer for the employee's hours, may evidence a special employment relationship. *See Walrond v. County of Somerset*, 382 N.J. Super. 227, 238 (App. Div. 2006).  Here, pursuant to the De-Icing Agreement, FedEx indirectly paid Plaintiff's wages by paying Contego a fixed hourly rate per-employee.  In turn, Contego paid to Omni-Serv the cost of all compensation per leased employee. (Defs.' Statement of Facts ¶¶9-11.)  This arrangement supports the finding that FedEx functioned as a special employer by indirectly paying Plaintiff's wages.

### 5. FedEx had the power to hire, discharge, or recall Plaintiff.

In New Jersey, an employer's right to control whether an employee would be assigned to work for that employer is the equivalent of the power to discharge that employee. *Gore v.*

9

*Hepworth*, 316 N.J. Super. at 242.  Here, Plaintiff contends that FedEx did not have the power to discharge Plaintiff but admits that FedEx could choose to hire a different employee to replace Plaintiff.  This Court finds that FedEx's ability to replace Plaintiff is the same as the power to discharge Plaintiff.  Therefore, FedEx could effectively decide that Plaintiff should no longer be assigned to perform its de-icing procedures.  In sum, FedEx fulfills each of the five factors of the "special employer" test, and is thus entitled to summary judgment.

**CONCLUSION**

For the reasons stated above, Defendants' Motion for Summary Judgment is **GRANTED**.

s/ Susan D. Wigenton, U.S.D.J.

Orig:        Clerk
cc:          Parties
             Magistrate Judge Steven C. Mannion